JOHN MULHENNY v. TOLEDO CENTRAL ST. RY.

DENNIS COUGHLIN v. TOLEDO CONSOL. ST. RY. ET AL.

CONSTRUCTION OF STREET RAILWAY GRANT ORDINANCE AVOIDING MONOPOLY OF FRANCHISE.

> An ordinance granting a franchise to electric street railway, providing that "only one set of wires and poles shall be erected upon any one street" cannot be construed to give the first company erecting its poles and stringing its wires the exclusive right to operate its line of street railway on a given street, but rather stipulate that such company can only erect one set of poles and wires thereon.

MOTION for preliminary injunction.

**O. S. Brumback,** for plaintiff.

**Barton Smith,** for defendant.

**SCRIBNER, J.**

We have given such consideration as time would permit to the questions presented in the cases submitted to us today upon applications for temporary injunctions.

1. The ordinance of November 25, 1889, should have such reasonable construction as will, if possible, give force and effect to all its

material provisions, and harmonize it with existing ordinances conferring rights and privileges upon street railway companies. A construction which will materially impair or substantially destroy such existing rights, should, if possible, be avoided.

2. The ordinance of March 27, 1889, entitled, "An ordinance to grant to David Robinson, Jr., trustee, the right to construct and operate an electric street railroad on and over certain streets in the city of Toledo," embraced—in the streets therein enumerated, the portions of Summit and Monroe streets involved in this controversy.

By Sec. 4 of that ordinance it was provided that "the cars of said street railroad shall be propelled and lighted by electric power, and shall be properly heated in cold weather; and for these purposes the said David Robinson, Jr., trustee, his successors or assigns, are authorized to construct, operate and maintain along the line, of said street railroad, such necessary structures, appliances and equipments as may be necessary to successfully operate the same." This section further requires that no wires shall be maintained at a height of less than eighteen feet above the surface of the street, and that upon the streets here in controversy, among others, iron poles only should be erected; also that all poles placed in any of the streets named should conform to the provisions of any and all general ordinances of the city of Toledo then in force, regulating the erection of poles in the streets of the city of Toledo, so far as the same might be applicable. By Sec. 6 it was further provided that "the said David Robinson, Jr., trustee, his successors or assigns, shall, in the construction, management and operation of said railroad, in all respects comply with, and conform to, all general ordinances of the city of Toledo, now or hereafter in force or amendments thereto, regulating the mode of constructing and operating street railroads, so far as the same are not inconsistent with the provisions of this ordinance."

By Sec. 2, authority was granted said Robinson, trustee, or his assigns, "to occupy, according to law and ordinance, so much of the existing street railroad tracks upon the above named streets as is necessary for the operation of said electric street railroads therein."

3. The ordinance of November, 1889, upon the true construction of which this controversy largely depends, contains the following provisions:

"For the purpose of dispensing with as many poles in the streets as possible, all existing poles therein are authorized to be used for electric street railway purposes, upon reasonable compensation being made for the use thereof to the persons or company owning the same. Pro-

vided, that *only one set of wires and poles shall be erected upon any one street.*"

By the terms of this ordinance street railway companies were required to file their written acceptance of the terms of the ordinance, and also a bond with approved surety, before they should be entitled to its benefits. Both street railway companies complied with these requirements: the Consolidated Company, December 11, 1889, and the Toledo Electric Company, July 14, 1890. The Electric Company placed its poles and wires in place, November 17, 1889.

4. It is now contended by the plaintiffs, who sue under the statute, Sec. 1778 Rev. Stat., in behalf of the city, that inasmuch as the poles and wires of the Electric Company were placed in position at the date named, the Consolidated Company is prevented, under the terms above mentioned in the ordinance of November 25, 1889, from placing a second set of poles and wires to operate its lines of railway upon and along the streets so occupied. It is claimed on behalf of the plaintiffs, that by force and effect of the provisions of that ordinance above quoted, the company which first succeeds in erecting its poles and stringing its wires, thereby acquires the exclusive right to operate with electricity lines of street railway upon the streets so occupied. Should the ordinance of November 25, 1889, receive the construction so contended for?

(a) Had the Consolidated Company succeeded in getting its poles and wires in place in advance of the Electric Company, it would, under the construction contended for by the plaintiffs, have acquired the exclusive right to use such parts of its lines as are so equipped, and would therefore have bisected the system or line of railway provided for in the ordinance of March 27, 1889, and materially impaired or substantially destroyed the franchise conferred by that ordinance.

(b) A construction leading to these results would have invited a race between the two rival companies, and tended to provoke breaches of the peace and other disturbances in the public streets of the city.

(c) Such a construction also results in conferring a monopoly in the use of electric appliances upon the company which shall first succeed in placing such appliances in the street. A monopoly of this charcter may not, in our opinion, be conferred by the city council. And we will not so construe the provisions in question, unless compelled to do so, as to impute to the council an intention to do a thing which they are forbidden to do. We have already held in another case that under this ordinance, no provision is made for compelling either company to furnish power to the other.

Mulhenny v. Railway.

5. If the provision in question be a mere exercise of the police power, we are clearly of opinion that it cannot be enforced by bill in equity, or by injunction.

6. As at present advised, we are of opinion that when the Consolidated Company, December 11, 1889, filed its acceptance and bond with the city authorities, as required by the ordinance of November 25, 1889, it thereby stipulated that it would erect but one set of wires and poles upon the streets in question; it did not bind itself that no other company acquiring from the city the right so to do, should not erect for itself a second set of wires and poles. We think the same rule applies to the Electric Company, under its acceptance.filed in July, 1890. Neither company could be deprived of the right, under the ordinances then existing, by the action of the other party, from providing and placing in the streets the appliances necessary for the operation of their respective systems.'

We do not determine the question now pending before us in another case, as to what may be the respective rights and remedies of the two street railway companies, in case it shall be hereafter found that two independent lines of trolley wire over the same track cannot be successfully maintained and operated.

It follows that the injunctions prayed for must be refused.

**Bentley** and **Haynes, JJ.,** concur.